## Case No. 16,200.

UNITED STATES v. ROUSMANIERE'S ADM'RS et al.

[2 Mason, 373.] [1]

Circuit Court, D. Rhode Island. Nov. Term, 1821.

BANKS AND BANKING—COLLECTION OF DUTY BONDS —PAYMENT BY FORGED INDORSEMENTS —EQUITIES OF BANK.

Where a bank, in which the bonds for customs were left for collection under the authority of the government, discounted for the principal obligor certain notes for the payment of these bonds, and the proceeds were carried to the credit of the United States by the bank, in discharge of the bonds, and it turned out that the indorsements on the notes were forgeries practised by the principal, it was *held*, that the bonds were discharged, and there was no remedy in equity to acquire a priority on the assets of the principal.

Bill in equity brought by the United States, as trustees of the Newport Bank, against the defendants as administrators of the estate of Lewis Rousmaniere. The bill in substance states, that the Newport Bank is a bank of deposit of the United States for the revenue collected in that district, and agent for the collection of such revenue. That two custom house bonds, executed by Rousmaniere and some of the defendants as his sureties, were deposited in the bank for collection, which bonds were for $1,576 15/100, and payable on the 29th and 30th of April, 1820; that on the 25th of the same month Rousmaniere proposed to the bank to receive in payment of these bonds two notes to be signed by himself, and indorsed by John P. Mann and Andrew Winslow, (two of the defendants) one note for $750, payable in 30 days, and one note for $750, payable in 60 days, he, Rousmaniere, paying the usual discount; that the bank directed their cashier to receive the same notes in payment of the bonds, and to pass the amount to the credit of the United States; and on the next day (the 26th of April) Rousmaniere delivered to the cashier two notes, purporting as above, in payment of the bonds, and he received them in payment, and delivered up the bonds to Rousmaniere, and passed the amount to the credit of the United States; that before the bonds became due. Rousmaniere, out of the money so credited to him by the bank, paid a debt due to the bank of $600, but this payment was not a part of the agreement relative to the payment of the custom house

bonds, and Rousmaniere replaced the sum so paid, before he took away the bonds; that when the notes became due, payment was demanded of the administrators of Rousmaniere, he having died in the interim, and also of the indorsers; but payment was refused, and by Mann, because the indorsement of his name was a forgery; that the administrators have refused to deliver back the bonds to the bank, which are in their hands uncancelled, or to acknowledge the debt to be still due on the bonds; that his estate is insolvent; that in fact the signature of Mann was a forgery, made by Rousmaniere to deceive the bank, and that the notes delivered to the bank were delivered by Rousmaniere as true and genuine notes; and upon the faith thereof the bonds were delivered to him by the bank. The prayer of the bill then is, that the notes so received may be decreed not to be a payment of the bonds, and that the debt is still due on the bonds and ought to be paid out of the estate of Rousmaniere in the hands of the administrators, or, that the bonds be delivered up to the plaintiffs, and be paid by the obligors, and for other relief. The answer of the administrators denies, that the Newport Bank is agent of the United States in the manner stated in the bill; and avers, that the custom house bonds were punctually and bona fide paid by Rousmaniere, and being discharged were delivered up to him. It further avers, that the two notes above stated were not received in payment of the bonds, but were discounted for Rousmaniere by the bank, in the ordinary course of business; that the United States have no claim on the bonds, full payment having been made to the collector, and he having been credited with the amount in the settlement of his accounts with the United States; that the bank have no title to obtain a preference by using the name of the United States, and are entitled only to a dividend in common with other creditors. The answers of the co-obligors and sureties on the bonds allege a due payment of the bonds, and that they are discharged; and aver, that they are ignorant how the money was obtained; and also aver, that the bank had no right to accept the notes in payment of the bonds. The answer of Winslow does not admit his indorsement on the notes, averring, that he cannot say, whether he signed them or not, as the bank have refused to let him see them. The answer of Mann denies, that he ever indorsed the notes.

The general replication being filed, and evidence taken, the cause was set down for argument at this term.

Searle & Robbins, for plaintiffs.
Hazard & Randolph, for defendants.

STORY, Circuit Justice. This cause has been argued at considerable length, but it

---

[1] [Reported by William P. Mason, Esq.]

does not appear to me to involve any real difficulty. Stripped of the disguise, which the bill attempts to throw over them, the naked facts appear to be these. Mr. Rousmaniere was indebted to the United States on two custom house bonds, which were lodged at the Newport Bank in the usual course of business for collection. Before they became due, and with the avowed intention of paying them out of the proceeds, Mr. Rousmaniere procured two indorsed notes to be discounted at the bank, and paid the discount. The remaining proceeds were applied with other monies of Rousmaniere to the payment of the bonds, which were delivered up to him, and the amount was credited by the bank, first to the collector of Newport, and by him to the United States; and in a final settlement of accounts has been duly credited to the collector at the treasury department. It turns out, that the notes so discounted were not what they purported to be, the indorsement of the signature of Mr. Mann being a forgery. The bank has brought this suit to have these bonds re-delivered to it, they now remaining in the hands of Rousmaniere's administrators uncancelled; and to procure a decree, that the bond debts have not been paid, and ought to be paid by the administrators. What authority the bank has in this case to make use of the name of the United States, I profess not to understand. The district attorney is no party to the bill, and I cannot perceive, that in any legal sense the United States are established to be trustees of the bank. The bonds never were assigned to the bank by the United States, nor is there any equitable ground, upon which the bank can claim any interest in them. If they have been regularly paid, they are extinguished, and their functions are gone; if not so paid, then they remain the exclusive property of the government; and the recovery, if at all, must be for their exclusive use.

The question, therefore, naturally arises, whether these bonds have been paid. And it is most manifest, that they have been duly paid, and credit accordingly given to the public treasury. But it is said, that these spurious notes were received in payment of the bonds by the bank, as agent of the United States, and payment in such notes is utterly void. But in point of fact, the notes were never so received, or paid. They were discounted at the bank in the usual course of business, and the discount was received by the bank; and the most that can be said is, that the proceeds were applied to the payment of the bonds. If the notes had been discounted at another bank, and the proceeds so applied, there would be no pretence to say, that the payment was not good and irrevocable. It cannot vary the case, that the bank here was entrusted with the collection of the bonds. When it applied its own money to the discount of Rousmaniere's note, the money became

Rousmaniere's, and, as such, was paid over to the United States; and it matters not how Rousmaniere obtained it. Neither is it true, that the notes were ever received in payment of the bonds for the United States. The United States never had any interest in them, or title to them. They were the exclusive property of the bank, and the discount was for its own profit. It is impossible, therefore, to sustain the position, on which the whole argument of the plaintiff rests. Besides, the bank had no authority from the United States to receive such notes in payment. It cannot be inferred from the nature of such an agency in general; and in respect to the government, it is perfectly clear, that no right exists in any public officer to delegate such an authority; and if it did, it is as clear, that none was given. So that, if the bank had undertaken to receive the notes in payment, it would have been at its own peril, and it would be responsible for the money due on the bonds.

In every view, this bill has not a shadow of right to sustain it; and I think the defendants are entitled to recover costs, to be taxed against the bank, which is the real plaintiff in the case. Bill dismissed.